WILLIAM R. WILKERSON, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 6289

March 5, 1971                    482 P.2d 314

*Robert G. Legakes,* Public Defender, and *Jeffrey D. Sobel,* Deputy Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General, *Roy A. Woofter,* District Attorney, and *Larry C. Johns,* Deputy District Attorney, Clark County, for Respondent.

**OPINION**

By the Court, ZENOFF, C. J.:

William Wilkerson was charged on August 6, 1968 with the attempted murder and assault with intent to kill Jerry Zohner, a North Las Vegas policeman. He was also charged with assault with intent to kill Thomas Fay and Cleveland Avery, also North Las Vegas policemen. He was convicted of assaulting officer Zohner with intent to kill and of assaulting Avery and Fay with a deadly weapon and was sentenced to 13 years in prison. He appeals these convictions.

On August 2, 1968, at or about 7:30 a.m., Wilkerson, his brother-in-law and a friend, commenced a drinking bout that continued throughout the day. They consumed large quantities of alcohol, including beer, scotch and whiskey, mixing all three at all of the times and places of their orgy. At the time of the incident to be related his blood alcohol content was .274 which considering that .150 determines intoxication made him very drunk.

Very late in the afternoon, but before dinner, he fired his small pistol twice to convince a friend that it was not a toy. The shots caused the police to investigate the disturbance. Officers Fay and Avery arrived first. Having been forewarned that the police were probably coming, Wilkerson removed an unloaded hunting rifle from his trunk and was carrying it in his left hand when the police officers came upon the scene. The Derringer, with one live round in it, was in his pocket. Upon arrival of the police car Wilkerson walked over to it, pulled the Derringer pistol from his pocket and ordered the officers from the car. He disarmed Fay and Avery by placing his gun against their persons and threatened to kill them if they did not obey his orders. Officer Zohner drove up in his squad car which he parked nearby. Wilkerson pointed his gun at Zohner and threatened to kill him while placing his gun against Fay, thus, forcing Zohner to disarm.

Officer Moody arrived and parked his unmarked car behind Zohner's. Unaware of what was taking place, Moody approached the scene and called out to Zohner when he was about 50 feet away. Zohner was unable to answer. Moody approached closer, noticed Wilkerson's gun, then returned to his patrol car to call in and report the incident. Wilkerson approached Moody with his gun pointing at Moody, where-upon Moody drew his own gun and the shooting started. Who fired first is not clear, but officer Zohner was shot by Wilkerson in the back rib cage and in the hip.

Wilkerson appeals his conviction asserting error in the trial court's giving and failing to give certain instructions.

1. He first complains that "assault" being an essential element of the crimes of which he is convicted, assault with intent to kill, NRS 200.400(1), and assault with a deadly weapon with intent to commit bodily injury, NRS 200.400(2), the term should have been defined for the jury. He is correct. State v. Harvey, 62 Nev. 287, 148 P.2d 820 (1944). Throughout all of the pertinent instructions the word "assault" is used, but is nowhere defined. In one instruction, No. 5, the court directed

the jury that, "You must find from the evidence that he committed acts constituting assault. . . ." Yet, how the jury is to recognize those facts is not stated.

The question immediately becomes one of degree. We must ask whether in the light of all the facts, failure to define "assault" is patently prejudicial (Garner v. State, 78 Nev. 366, 373, 374 P.2d 525 (1962)), and the court must give the instruction *sua sponte* (cf. Mears v. State, 83 Nev. 3, 11, 422 P.2d 230 (1967)), or whether the error must be deemed harmless.

In Nevada assault is an unlawful attempt coupled with present ability to commit a violent injury on the person of another. NRS 200.470. Mere menace is not enough. There must be an effort to carry the intention into execution. State v. Huber, 38 Nev. 253, 268, 148 P. 562 (1915).

Despite Wilkerson's testimony that he meant no harm his actions contradict his words. Drunk as he was, nevertheless, he clearly came within the definition of the elements that constitute assault. He held the gun against the persons of Fay and Avery and threatened to kill them. In State v. Smith, 10 Nev. 106, 116 (1875), a conviction was affirmed because the defendant cocked his gun, put it to his shoulder and advanced toward the other person. The state of the facts abundantly reveals the failure to define assault as harmless error. Chapman v. California, 386 U.S. 18, 23 (1967). "Where there is doubt of the accused's guilt we would be inclined to grant a new trial. However, this record is clear. An innocent verdict could not be supported." Pacheco v. State, 82 Nev. 172, 179, 414 P.2d 100 (1966). Nor could an innocent verdict be supported here.

2. Wilkerson also urges that the instructions given did not sufficiently emphasize the specific intent required to be shown to prove the crimes charged. This assertion is not well-founded. The instructions here given did not improperly lead the jury to consider only general intent as in Graves v. State, 82 Nev. 137, 142, 413 P.2d 503 (1966); State v. Pappas, 39 Nev. 40, 152 P. 571 (1915); and People v. Hill, 429 P.2d 586, 594 (Cal. 1967). The instruction objected to directed the jury that before it might convict Wilkerson of assault with a deadly weapon it must find that "he committed an assault with a deadly weapon *with the intent to inflict upon the person of another a bodily injury*. . . ." Though the word "specific" is not used, the

instruction sufficiently directs the jury to consider specific intent.

3.  Wilkerson "shotguns" other issues, none of which are sufficiently meritorious to warrant reversal. It was not error to refuse the request for an advisory verdict (NRS 175.381; State v. Corinblit, 72 Nev. 202, 298 P.2d 470 (1956); Cook v. State, 74 Nev. 51, 321 P.2d 587 (1958)), because the state failed to prove that Zohner's injuries were to vital parts of his body. Citations of authority are not needed to convince us that the rib cage is a vital part of the human body.

4.  The appellant also protests deficiencies of instructions relating to intoxication, but he cannot bypass his own conduct. Though drunk, he acted deliberately and with full intent. His actions spoke his state of mind. He carefully disarmed the officers, watched them while holding the gun against them, ordered them around under threats and was capable of harming them. It was apparent that he intended to do so if he was not obeyed. The jury was otherwise well instructed. State v. Alsup, 69 Nev. 121, 243 P.2d 256 (1952); NRS 193.220.

Affirmed.

BATJER, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.