KENNETH RONALD GRAVES, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 4951

April 19, 1966

413 P.2d 503

[Rehearing denied May 17, 1966]

*Harry E. Claiborne,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, of Carson City,
and *William J. Raggio,* Washoe County District Attor-
ney, of Reno, for Respondent.

**OPINION**

By the Court, THOMPSON, J.:

A jury convicted Graves of attempted first degree murder. He was the sole witness in defense. His request for reversal and another trial rests mainly upon the jury instruction quoted below,[1] commenting upon his testimony. The state acknowledges error and concedes

---

[1]Instruction No. 6 reads as follows: "The defendant has offered himself as a witness on his own behalf in this trial, and in considering the weight and effect to be given his evidence, in addition to noticing his manner and the probability of his statements taken in connection with the evidence in the cause, you should consider his relation and situation under which he gives his testimony, the consequences to him relating from the result of this trial, and all the inducement and temptations which would ordinarily influence a person in his situation. You should carefully determine the amount of credibility to which his evidence is entitled; if convincing, and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it."

that the instruction offends the prohibition of NRS 175.170 reading: "In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses the person so charged shall, at his own request, but not otherwise, be deemed a competent witness, the credit to be given his testimony being left solely to the jury, under the instructions of the court; provided: 1. That no special instruction shall be given relating exclusively to the testimony of the defendant; and 2. That the giving of such instruction shall constitute reversible error." We agree with the legislature that the giving of a special instruction relating exclusively to the testimony of a defendant in a criminal case is, per se, prejudicial error. However, our conclusion is reached entirely apart from the legislative expression that the giving of such an instruction "shall constitute reversible error." The power to decide that question is lodged with the judicial rather than with the legislative branch of our state government. Nev. Const. art. 3, § 1[2]; cf. State ex rel. Watson v. Merialdo, 70 Nev. 322, 268 P.2d 922 (1954); McCarthy v. Mobile Cranes, Inc., 18 Cal.Rptr. 750, 199 Cal.App.2d 500 (1962); Kostas v. Johnson, 224 Ind. 540, 69 N.E.2d 592 (1946). Accordingly, we consider the legislative language to be precatory in character. Cf. Ratliff v. Sadlier, 53 Nev. 292, 299 P. 674 (1931). We do not criticize the 1949 legislature for having so expressed itself, as its enactment was apparently invited by the decisions of this court in State v. Williams, 47 Nev. 279, 220 P. 555 (1923) and State v. Fitch, 65 Nev. 668, 200 P.2d 991 (1948). In each case an instruction similar to the one here challenged (though not as prejudicially strong) was denounced as error, but labeled harmless. In Williams, supra, the court concluded its discussion of the statute as it then existed by stating: "Must we not conclude that, if the legislature intended

---

[2]Nev. Const. art. 3, § 1 reads: "The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases herein expressly directed or permitted."

such a result (reversible error), it would have expressly provided for the reversal of a judgment where such an instruction is given?" Of course, when Williams (1923) and Fitch (1948) were written the statute did not direct reversal. The rule of harmless error was invoked to save the convictions. In 1949 the legislature responded to the question asked in the Williams opinion by amending the statute to provide for reversal. Since that amendment, this court has mentioned the statute only once. In Scott v. State, 72 Nev. 89, 295 P.2d 391 (1956), it was held not to be error to refuse a somewhat similar instruction because of the statutory prohibition. The implication of State v. Williams, supra, and State v. Fitch, supra, that the legislature is empowered to decree what shall constitute reversible error in a criminal case is now expressly repudiated. As before noted, the legislative expression in that regard is constitutionally impermissible. Further, we expressly overrule those cases insofar as they invoke the rule of harmless error (NRS 169.110)[3] to overcome a violation of NRS 175.170 as we believe that prejudice is built into the prohibited instruction.

The legislative prohibition found in NRS 175.170 rests, we think, upon the constitutional command that judges shall not charge juries "in respect to matters of fact but may state the testimony and declare the law." Nev. Const. art. 6, § 12. The thrust of the constitutional mandate is to preclude comment on the evidence by the judge and includes within its scope the matter of the credibility of witnesses. People v. Boren, 139 Cal. 210, 72 P. 899 (1903). Matters of fact, including the credibility of witnesses, are for jury resolution. For this reason, it is permissible to instruct generally that the

---

[3]NRS 169.110 reads: "No judgment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right."

jury is the sole judge of the credibility of all witnesses, but impermissible to single out the testimony of one and comment upon its quality and character.

The challenged instruction we are here considering offends not only our Constitution, art. 6, § 12, and statute NRS 175.170, but our sense of justice as well. No one would suggest that a judge should be allowed to instruct the jury that a defendant in a criminal case, who has testified on his own behalf, is a liar and not to be believed. It seems to us that an instruction carrying similar disparaging implications is almost as offensive. Here the jury was charged, inter alia, to "consider his relation and situation under which he gives his testimony, the consequence to him relating from the result of this trial, and all the inducement and temptations which would ordinarily influence a person in his situation," in deciding the credit to be given the defendant's version of the incident in question. Such language comes close to an admonition that the defendant is not worthy of belief. It is, of course, permissible for the jury to reach that conclusion by itself. It is not permissible for the court to encourage that result by instruction. In this case, the prosecutor emphasized the instruction in his summation to the jury[4] thereby adding to the damage already accomplished. For the reasons

[4]"That is true of every witness, and there is a particular Instruction in here that the Court has instructed you that the defendant himself having taken the stand in this case, that you are entitled to notice his manner on the stand; and I think you saw the defendant's manner on this stand. I think you saw it in comparison to the other witnesses in this case. You should consider his relation and the situation under which he gave his testimony and the consequences to the defendant relating from the result of this trial.

"Did any of these things prompt what the defendant said from this witness stand? Is there any reason why the defendant's testimony in this case is the only one that is different from every other witness who took the stand on practically everything that was said as the cause of his relation and situation in this case? Is it because of the consequences resulting from the result of this case and all the inducements and temptations which would ordinarily influence a person in his situation? Is his testimony the truth or is it the result of the situation in which he has placed himself?"

142

expressed, we must reverse and remand for a new trial. The failure of defense counsel to object to the instruction is immaterial. NRS 175.515; Harvey v. State, 78 Nev. 417, 375 P.2d 225 (1962).

Another assigned error has merit. We turn to discuss it in order to preclude recurrence when this case is tried anew. The defendant was charged with having committed the crime of attempted first degree murder, which requires proof of a specific intent to kill.[5] People v. Snyder, 15 Cal.2d 706, 104 P.2d 639 (1940). The jury was instructed on general intent and specific intent.[6] The general intent instruction should not have been given. The intent to kill must be proved by evidence and the inferences reasonably deducible therefrom and it may not be based upon a presumption. People v. Snyder, supra; People v. Miller, 2 Cal.2d 527, 42 P.2d 308 (1935); People v. Mize, 80 Cal. 41, 22 P. 80 (1889). A general intent instruction is permissible in a murder prosecution where malice and intent are presumed from the unlawful killing. The burden is shifted then to the defendant to establish mitigating circumstances or justification. That instruction is also appropriate when the offense

---

[5]NRS 208.070 reads in part: "An act done with intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime * * *."

NRS 200.030(1) provides: "All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery or burglary, or which shall be committed by a convict in the state prison serving a sentence of life imprisonment, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree."

[6]The general intent instruction stated: "Upon the question of intent, the law presumes a person to intend the reasonable and natural consequences of any act intentionally done; and this presumption of law will always prevail, unless, from a consideration of all the evidence bearing upon the point, the jury entertain a reasonable doubt whether such intention did exist." [Instr. 19]

The specific intent instruction was: "When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found by the Jury as a matter of fact before the Jury can find a verdict of guilty." [Instr. 20]

charged does not require proof of specific intent. However, it may not be given when the defendant is charged with attempted murder. A homicide was not accomplished and a foundation does not, therefore, exist upon which to presume that the accused intended the "natural and probable consequences of his act." People v. Snyder, supra.

We have considered the remaining assignments of error and find them to be without merit.

Reversed and remanded for a new trial.

ZENOFF, D. J., and SUNDEAN, D. J., concur.

The Governor designated Honorable Clarence Sundean to sit for MR. JUSTICE BADT.