THOMAS CORNELIUS HOWARD, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5518

October 29, 1968 · · · · · · 446 P.2d 163

[Rehearing denied November 27, 1968]

*Charles L. Kellar,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, of Carson City, and *George E. Franklin, Jr.,* District Attorney, Clark County, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

A Clark County jury found Howard guilty of first degree murder and directed his imprisonment for life. His appeal presses three claims of error. We find that none has merit and affirm the conviction.[1]

1.   It is asserted that the trial jury was an unconstitutional jury since, in the total selection process, Negroes, nonvoters, and exempt jurors were automatically excluded. It is the practice in Clark County to select prospective jurors from the list of registered voters. Since this case was tried in 1967, the Jury Commissioner used the list of 93,357 voters who had registered to vote at the general election of November 1966. From that number was purged the names of 26,853 registered voters who did not vote. The names of those remaining, 66,504 in number, were placed on individual addressograph cards, and all cards deposited in a huge drum from which was drawn a jury panel of 7,042 persons for the 1967 court year.[2] From that panel was drawn 800 names to serve all departments of court for the first

---

[1]Although two additional assignments of error were specified, appellant's counsel did not brief or orally argue them. We, therefore, deem them waived and shall not consider them.

[2]NRS 6.045(2) provides: "If a jury commissioner is so selected, he shall in January of each year estimate the number of trial jurors which will be required for attendance on the district court until the next annual selection, and shall select such number from the qualified electors of the county not exempt by law from jury duty, whether registered as voters or not * * *."

few months of 1967, and about 350 of those 800 were found to be exempt from serving. From the remaining 450, about 107 were assigned to the Howard case.

(a) A state court conviction violates the equal protection clause of the Fourteenth Amendment if based on a verdict of a jury from which Negroes are excluded because of race. Whitus v. Georgia, 385 U.S. 545 (1967); Strauder v. West Virginia, 100 U.S. 303 (1879). Such discrimination must be proved. Tarrance v. Florida, 188 U.S. 519 (1903). The record before us contains nothing to suggest an exclusion of Negroes from jury service because of race. Our statutes do not exclude them. Cf. Bush v. Kentucky, 107 U.S. 110 (1882). Neither may we find an underrepresentation of Negroes because of the selection method employed since the record is silent as to the number of Negroes who were qualified electors in Clark County, the number who registered to vote and voted, and the number whose names were drawn for trial jury service for the term of court in question. Thus, there exists no basis from which to ascertain whether a significant disparity exists between the percentage of Negroes who are qualified electors and eligible for jury service and those on the jury venire. Cf. Sims v. Georgia, 389 U.S. 404 (1967); Jones v. Georgia, 389 U.S. 24 (1967); Whitus v. Georgia, supra. On this record there is no substance to the charge that Negroes were excluded from jury service because of race.

(b) Registered voters who did not vote were automatically excluded in the jury selection process. Statutory law provides that trial jurors shall be selected from the qualified electors of the county not exempt by law from jury duty, whether registered as voters or not [NRS 6.045(2); NRS 6.050], and NRS 6.010 specifically provides that "every qualified elector of the state, whether registered or not, who has sufficient knowledge of the English language, and who has not been convicted of treason, felony, or other infamous crime, and who is not rendered incapable by reason of physical or mental infirmity, is a qualified juror of the county in which he resides."

Appellant contends that he was entitled to be tried by a jury drawn from a venire of qualified electors, and that it was impermissible to limit such electors to those who registered to vote and actually voted. It is true that the above noted statutes provide that one may be a juror if a qualified elector whether registered as a voter or not. It does not follow, however, that

the statutory purpose was to require inclusion of non-registered voters on the venire. The statutory references to voting registration permit the inclusion of qualified electors who have not registered to vote, but do not require their inclusion. The provision is directory [State v. Squaires, 2 Nev. 226 (1866)] and we find no statutory violation in the selection process employed here. We do not decide whether a question of federal constitutional dimension would arise if the record were to demonstrate that exclusion of qualified electors who had not registered to vote carried with it a concomitant discrimination because of race.

(c) The statutory exemptions from jury service provided for by NRS 6.020 were automatically honored in the jury selection process. Some 350 persons enjoying exempt status were eliminated from the panel of 800 persons drawn to serve the court during the first few months of 1967. It is claimed that this automatic purging without request from the persons involved was without authority and invalidated the jury finally selected to try Howard. This claim is not sound. Efficient administration suggests the wisdom of eliminating exempt jurors before they request exemption.

On the record before us we conclude that the jury selection process satisfied constitutional and statutory requirements.

2. When this case was tried NRS 175.105(9) was in effect.[3] By reason of that statute and the decision of Witherspoon v. Illinois, 391 U.S. 510 (1968), the appellant contends that the jury verdict directing life imprisonment must be set aside. This contention has no merit. Witherspoon does not touch a case where the sentence imposed is life imprisonment. Bumper v. North Carolina, 391 U.S. 543 (1968). In any event, the rationale of Witherspoon is inapposite to the Nevada statute since the statutory purpose is to disqualify jurors whose opinions against the death penalty would preclude their finding

---

[3]NRS 175.105 provided: "A challenge for implied bias may be taken for all or any of the following causes, and for no other:

\* \* \* \* \*

"(9) If the offense charged is punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty; in which case he must neither be permitted nor compelled to serve as a juror." This statute has since been repealed and replaced by NRS 175.036, effective January 1, 1968, which allows a challenge "for any cause or favor which would prevent him as a juror from adjudicating the facts fairly."

the defendant guilty. The Illinois statute considered in Witherspoon did not involve the right to challenge for cause those prospective jurors who stated that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Witherspoon v. Illinois, supra, at 513.

3. The third claim of error is unclear. It seems to challenge the constitutionality of NRS 200.030 which allows the jury to fix the penalty for first degree murder at death or imprisonment for life with or without the possibility of parole. It is constitutionally permissible to give a jury the discretion to fix the nature and extent of punishment within limits legislatively decreed. Pinana v. State, 76 Nev. 274, 284, 352 P.2d 824 (1960).

Affirmed.

COLLINS, ZENOFF, BATJER, JJ., and CRAVEN, D. J., concur.