CARROLL EUGENE BARNES, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 5494

February 10, 1969            450 P.2d 150

---

*Charles L. Kellar,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, State of Nevada, and *George E. Franklin, Jr.,* District Attorney, and *Alan R. Johns,* Deputy District Attorney, Clark County, for Respondent.

**OPINION**

By the Court, COLLINS, C. J.:

This appeal is from a conviction of appellant of murder in the second degree. We affirm the conviction.

On the evening of May 18, 1966, the decedent, Tommy J. Tyree, and a friend, Clyde Van Voras, both cowboys, were drinking and apparently looking for female companionship. They met a Negro named Max L. Haynes who arranged a "date" for the deceased. Van Voras testified that he set up his own "date." Van Voras and his date left the bar where they had been drinking and proceeded to an apartment house

nearby. Haynes took the decedent to the same apartment house to meet the girl Haynes had set up for him. At the apartment house the arrangement proved unsatisfactory, and the cowboys decided to leave. An argument ensued, and, as Van Voras testified, he knocked Haynes down and kicked him a few times, and the cowboys then departed.

At this point there are two versions of what occurred.

Van Voras testified that he and the decedent ran for a couple blocks and walked a few more blocks away from the apartment. When they were about six blocks away, Haynes and the appellant, who the cowboys had not seen before this point, suddenly appeared from around a corner. Van Voras had a knife in one hand and a board in the other; the decedent, Tyree, had a knife; and Haynes was armed with a knife. Haynes came at Van Voras and they began fighting. Van Voras heard a shot and looked around to see the decedent "sort of fold over," and saw that appellant was holding a gun in his hand. Other shots were fired by appellant, and appellant then pointed the gun at Van Voras and said, "I will kill you, too." Appellant pulled the trigger, but the gun was apparently empty. Appellant and Haynes then ran from the scene. Van Voras called the police.

Appellant testified that he is a professional prize fighter and he had gotten up at about five o'clock on the morning of the shooting to do his road work. He had just gotten dressed when he heard a ruckus outside on the street. He looked out the window and saw a man being beaten by two other men using a stick and a "plaited piece of leather" with a metal ball attached to the end. He armed himself with a pistol which was in his bedroom. He went outside and the fight was still going on. He tried to stop the two cowboys from beating Haynes, told them to leave, and when Tyree started to attack him fired two warning shots to attract his attention to the weapon. Tyree still came forward, and appellant shot him in the leg and when that didn't stop him he shot again. That shot stopped him. He fired a couple more shots to back Van Voras off from Haynes, and then appellant and Haynes departed. Haynes was apprehended by police officers almost immediately, but appellant got away.

On the morning of July 7, 1966, Officers Walker and Pearce of the Las Vegas Police Department received notice from the police dispatcher that there had been a robbery of the Western Union office in Las Vegas. The robber was described as a male Negro, 23 to 25 years old, wearing a yellow short-sleeve shirt and black pants and carrying a gun. About 15 minutes after

they received notice of the robbery, they observed appellant about five or six blocks from the place of the robbery. He was wearing a yellow short-sleeve shirt and black pants. The officers approached him, and Officer Pearce asked if he was carrying a gun. Appellant answered, "Yes, I am." Officer Pearce asked him where it was and he said it was in his waistband under his shirt. Appellant started to reach for the gun, and Officer Pearce told him, "I will remove the weapon from you, just hold your hands still." The officer then removed the weapon from appellant's waistband and advised him that he was under arrest for carrying a concealed weapon.

1. Appellant's first assignment of error is that the gun introduced in evidence during the trial was obtained as a result of an unlawful search and seizure and should have been suppressed by the trial court. We do not agree with that contention.

In a recent decision of this court, Robertson v. State, 84 Nev. 559, 445 P.2d 352 (1968), we held that a police officer may "stop the occupants of an automobile for legitimate police investigation so long as there is probable cause for that action (citing cases)." We think that same rule applies to individuals where, as here, appellant was reasonably within the area of the robbed office and met a reasonable description of the robber.

Once the suspect has been detained, if the officer has reason to believe that the suspect is armed and presently dangerous to the officer or to others, he may "take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Terry v. Ohio, 392 U.S. 1 (1967). In Terry, the court said:

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Clearly, when an officer asks a suspect in an armed robbery case whether he is armed, and the suspect answers in

the affirmative, the officer is justified in believing the person is armed and presently dangerous. This justifies seizure of the weapon in question, whether there is probable cause for arrest or not.

2. Appellant next assigns as error a contention that as a matter of law the killing of Tyree by appellant was justifiable homicide and cites NRS 200.160. There was substantial evidence to support the jury's verdict. We will not disturb that finding. Elias v. State, 73 Nev. 108, 310 P.2d 621 (1957).

3. Appellant's final contention of error concerns exclusion of some persons from the jury because of their nonbelief in capital punishment as authorized by NRS 175.105. Appellant was found guilty of second degree murder, a noncapital offense. This same contention was recently resolved against appellant's position in this court's decision in Howard v. State, 84 Nev. 599, 446 P.2d 163 (1968).

The judgment of conviction is affirmed.

ZENOFF, BATJER, and THOMPSON, JJ., and WATERS, D. J., concur.