LEON HARLEY ANDERSON, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 6042

December 10, 1970                                        477 P.2d 595

[Rehearing denied February 9, 1971]

*Harry A. Busscher,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, State of Nevada; *Mark
C. Scott, Jr.,* District Attorney, and *Stewart R. Wilson,* Deputy
District Attorney, Elko County, for Respondent.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal from a jury conviction of murder in the first degree in which death was fixed as the penalty, and from an order denying a new trial. We affirm the conviction, the sentence, and the order.

In late October, 1968, Joan Ingram was traveling U.S. 93 south of Wells, Nevada, when her car broke down. On October 27, her partially clothed body was found five miles south of Wells and about 100 feet off that highway with multiple stab wounds in the back and deep lacerations across her neck. A Japanese bayonet with a 13-inch blade was found near the body. It was established to be the murder weapon. The Elko County authorities did not know the killer and were unable to make any immediate arrest.

About January 6, 1969, Sgt. Spencer of the Red Bluff, California, Police Department, investigated a complaint by a woman named Pat Keyser that a person by the name of "Andy Anderson" had threatened her with a gun when she refused to accompany him to a motel. The police were unable to locate "Andy Anderson."

On January 21, 1969, a Mr. Poppelton of Red Bluff went to the police station and told them that the man who had threatened Pat Keyser was sitting in her car at the hospital. When the police arrived at her car, no one could be found. As the officers were returning to the police station to get additional information, they saw appellant by the bus station about one block from the parking lot. He matched the description of "Andy Anderson." He was stopped by the officers, and when asked his name the suspect answered, "Anderson, Andy Anderson." When asked

if he had a gun, Anderson replied that he did but it was not a real gun. The gun proved to be a starter's pistol. It was taken from Anderson's possession. Further search of Anderson produced a knife with an 8-inch blade; it was also taken from him. He was then arrested for carrying a concealed weapon.

At the police station, after having been given a Miranda-type warning, during an interrogation about the concealed weapon offense Anderson volunteered information that he had recently killed a woman near Elko, Nevada. The officers verified that such a killing had in fact taken place and proceeded to take a statement from Anderson concerning it.

During this interrogation, Anderson asked the officers to retrieve for him a canvas bag containing personal possessions which he had left in an open field near Red Bluff. After three trips and additional instructions from Anderson as to its location, the bag was found and returned to the police station. Anderson asked the officers to get some cigarettes out of the bag for him, and in the process the officers discovered a Japanese bayonet which Anderson told them was identical to the one which he used to kill Joan Ingram.

While still at the Red Bluff jail, Anderson, after further Miranda-type warnings, gave additional statements to Lt. Moller and later to District Attorney Scott and Sheriff Harris of Elko County, Nevada, concerning the murder of Joan Ingram.

Anderson was formally charged with the murder of Joan Ingram on January 27, 1969. Preliminary hearing was held and he was bound over for trial. An Information was filed March 28, 1969, he was arraigned April 2, and trial was set to commence May 15.

On April 28, 1969, Anderson's court-appointed counsel, Michael Marfisi, sought by motion to be allowed to withdraw as trial counsel because of enactment by the legislature of Ch. 251, Stats. of Nevada 1969, prohibiting a deputy city attorney from defending an indigent person charged with a criminal violation. That motion was denied, but upon application to this court an alternative writ of prohibition was issued on May 5 and made permanent on July 11, 1969, precluding Marfisi's representation of appellant. See Marfisi v. District Court, 85 Nev. 445, 456 P.2d 443 (1969).

On May 4, 1969, Anderson escaped from the Elko County Jail. He was recaptured and returned to jail on June 12.

On July 14, 1969, Ross Eardley was appointed counsel for Anderson, and trial was set for September 8. At the trial setting, Eardley said he would not consent nor stipulate to the new trial date. He did not, however, object to it.

On August 7, 1969, Anderson's new counsel moved to dismiss the action because it had not been brought to trial within 60 days after filing of the information pursuant to NRS 178.556. He also contended his constitutional right to a speedy trial had been violated, sought a change of venue, and moved to suppress certain evidence. These motions were all denied, and the matter proceeded to trial before a jury.

During the jury selection, the trial judge excused a prospective juror when she said she could not consider imposing capital punishment but would not let that affect her determination of appellant's guilt or innocence.

During the trial, the judge gave Instruction No. 29 which appellant contends constitutes a special instruction relating exclusively to his testimony and is error per se under NRS 175.171 and Graves v. State, 82 Nev. 137, 413 P.2d 503 (1966).

The trial judge also gave Instruction No. 8 which attempted to distinguish between circumstantial and direct evidence. Appellant contends that because there was evidence admitted consistent with innocence but inconsistent with guilt, the jury could only have rendered a verdict of guilt by ignoring the instruction or the evidence or both.

Thus, the issues before us for decision in this appeal are these:

I.   Whether appellant was denied a speedy trial.

II.   Whether the lower court erred in denying the motion to suppress evidence.

III.   Whether the trial judge excused a prospective juror in violation of Witherspoon and Bean when she said she could not consider imposing capital punishment but would not let that affect her determination of guilt or innocence.

IV.   Whether the lower court erred in giving an instruction that prior inconsistent statements of the accused could also be used as evidence of guilt.

V.   Whether the jury ignored the instructions and the evidence in returning a verdict of guilty.

1.   Appellant contends he was denied a speedy trial in violation of his Sixth and Fourteenth Amendment rights under the U.S. Constitution as delineated by Klopfer v. North Carolina, 386 U.S. 213 (1967), and NRS 178.556.

To constitute a federal constitutional deprivation of rights, failure to accord a speedy trial must be shown to have resulted in prejudice attributable to the delay. Dickey v. Florida, 398

U.S. 30 (1970); Smith v. Hooey, 393 U.S. 374 (1969); United States ex rel. Solomon v. Mancusi, 412 F.2d 88 (2d Cir. 1969), cert. denied, 396 U.S. 936 (1969); Mull v. United States, 402 F.2d 571 (9th Cir. 1968), cert. denied, 393 U.S. 1107 (1969). The short delay here, caused as it was by appellant's escape and his counsel's application for a writ of prohibition to this court, without a clear showing of prejudice (and there was none here), does not amount to a federal constitutional violation.

NRS 178.556 states that the court "may" dismiss the information or indictment if the defendant is not brought to trial within 60 days. This rule is only mandatory[1] if there is not good cause shown for the delay. Ex parte Hansen, 79 Nev. 492, 387 P.2d 659 (1963); Ex parte Morris, 78 Nev. 123, 369 P.2d 456 (1962); Oberle v. Fogliani, 82 Nev. 428, 420 P.2d 251 (1966). The State, which had the burden of showing good cause for the delay, Ex parte Morris, supra, did so in this case. The statutory timetable for conduct of criminal proceedings is a guide to the speedy trial issue, but does not define the constitutional right. Stabile v. Justice's Court, 83 Nev. 393, 432 P.2d 670 (1967). Furthermore, before error for failure to accord a speedy trial can be raised on appeal, objection to the trial date set must have been made in the trial court. Harris v. State, 86 Nev. 197, 466 P.2d 850 (1970). No such objection was made here.

2. Appellant complains that his federal constitutional rights were violated by the manner of his arrest and the search of his person in Red Bluff, California.

By reason of the background information, complaint and description the police had about "Andy Anderson," they had legal cause and reason to stop him, ask his name and if he had a gun. Terry v. Ohio, 392 U.S. 1 (1968); McGuire v. State, 86 Nev. 262, 468 P.2d 12 (1970); Barnes v. State, 85 Nev. 69, 450 P.2d 150 (1969); Robertson v. State, 84 Nev. 559, 445 P.2d 352 (1968); Harper v. State, 84 Nev. 233, 440 P.2d 893 (1968). Upon his admission that he had a gun, and its production, even though it was later proved to be incapable of firing a loaded shell, and the subsequent search which produced the knife, the police had probable cause to arrest.

---

[1]See discussion whether NRS 178.556 is mandatory or permissive in 1969 Utah L.Rev. at 542–43.

3. The canvas bag which was tracked down and found by the officers at the request of appellant was not the product or result of a search. When the police opened it at his request to get some cigarettes, they were entitled to seize any evidentiary items exposed to their view. Warden v. Hayden, 387 U.S. 294 (1967); Harris v. United States, 390 U.S. 234 (1968); McGuire v. State, supra. The record also shows the police had appellant's consent to look in the bag. McIntosh v. State, 86 Nev. 133, 466 P.2d 656 (1970). Appellant maintained no expectation of privacy in the contents of the bag because he left it in an open field, and when found by the officers he asked them to open it and get some cigarettes for him. Katz v. United States, 389 U.S. 347 (1967); People v. Edwards, 71 Cal.Rptr. 598 (Dist.Ct.App. 1968); State v. Purvis, 438 P.2d 1002 (Ore. 1968). See also Frazier v. Cupp, 394 U.S. 731 (1969); Gebert v. State, 85 Nev. 331, 454 P.2d 897 (1969).

4. Appellant contends incriminating statements were obtained from him in violation of Miranda v. Arizona, 384 U.S. 436 (1966), because he was not advised the state would pay for appointed counsel if he demanded it before proceeding with the interrogation. The record simply does not bear out that contention. Anderson was advised of his Miranda rights no less than three times and on each occasion he said he clearly understood his rights and knew them better than the officers. He was specifically told that before giving the statement he had the right to have an attorney appointed by the court if he could not afford one. We have reviewed the record in depth on this point and cannot find any, let alone substantial, violation of his Miranda rights.

5. Mrs. Nola White was summoned as a prospective juror. During her voir dire examination, she was asked about her attitude toward the death penalty. Following is a verbatim transcript of her testimony on that question:

"BY MR. WILSON [Deputy District Attorney]:

"Q. Mrs. White if you thought the facts warranted it and if you were instructed that the law permitted it, would you have any reservations against imposing the death penalty in a particular case?

"A. Yes I do.

"Q. And what particular reservations are those?

"A. I don't believe in capital punishment.

"Q. Under any circumstances?

"A. No.

"Q. Would you feel then that the reservations about the death penalty that you do have would prevent you from making a decision as to the guilt or innocence, an unbiased decision as to the guilt or innocence of Mr. Anderson.

"A. No it wouldn't influence me on his guilt or innocence but I could not bring in a death penalty.

"Q. And then I take it you would refuse to even consider imposing it in any circumstances, is that right?

"A. That is right.

"MR. WILSON: Your Honor I would ask that Mrs. White be excused for cause.

"THE COURT: Yes the objection is sustained. Thank you very much Mrs. White. Draw the name of another juror please."

Appellant contends Mrs. White was improperly excused for cause as a juror, violating his constitutional rights decided by the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510 (1968), and by this court in Bean v. State, 86 Nev. 80, 465 P.2d 133 (1970). To validly exclude a prospective juror, it is necessary for the record to clearly show that he would never vote for imposition of the death penalty in any case, or his attitude would prevent him from making an impartial decision as to guilt or innocence. These are disjunctive or alternative showings, not conjunctive. Her answers clearly show she was properly excused on the first alternative ground.

6. Appellant complains that the giving of Instruction 29[2] constituted a special instruction relating exclusively to the testimony of the defendant which is error per se under the doctrine of Graves v. State, 82 Nev. 137, 413 P.2d 503 (1966). While Instruction 29 need not have been given, it does not violate the rule of Graves and is permitted by NRS 175.171.[3] Graves held,

---

[2]Instruction 29 reads: "Where an attempt is made to impeach the defendant as a witness by showing that on some former occasion he made a statement or statements contradictory to his testimony here, such evidence may be considered not only for the purpose of testing his credibility as a witness, but also along with all other evidence in determining his guilt or innocence."

[3]NRS 175.171, in pertinent part, reads: "[T]he credit to be given his [the defendant's] testimony being left solely to the jury, under instructions of the court. . . ."

"Matters of fact, including the credibility of witnesses, are for jury resolution. For this reason, it is permissible to instruct generally that the jury is the sole judge of the credibility of all witnesses, but impermissible to single out the testimony of one and comment upon its character and quality." 82 Nev. at 140–41.

Instruction 29 does not violate that mandate, but instead serves only to direct how his testimony might be considered by the jury. Credibility of a witness's testimony is a question of fact for the jury. The purposes for which any witness's testimony may be considered, if believed by the jury, is a question of law for the court. A reading of the objectionable Instruction No. 6 in Graves, 82 Nev. 137, at 138, demonstrates the vast difference between it and Instruction 29 in this case.

7. Appellant next complains that because there was evidence admitted consistent with his innocence and inconsistent with his guilt, error was committed by the jury in ignoring Instruction No. 8[4] or the evidence tending to prove him innocent. Instruction No. 8 is one form of instruction on circumstantial evidence, but where there is an adequate instruction on reasonable doubt, as there was in this case, it is not necessary to give such an additional instruction on circumstantial evidence. Vincze v. State, 86 Nev. 546, 472 P.2d 936 (1970). Furthermore, Instruction No. 8 speaks of "evidence", where it should have spoken of "proof", and while erroneous as a matter of law in that regard, the error favored appellant rather than prejudiced him. While the record discloses some evidence tending to prove appellant's innocence if that proof was believed by the jury (which it obviously was not), there is very substantial proof of his guilt. Under those circumstances in the record, the verdict of the jury will not be overturned on appeal. Tellis v. State, 85 Nev. 679, 462 P.2d 526 (1969); Brandon v. Travitsky, 86 Nev. 613, 472 P.2d 353 (1970). It was for the jury to decide what evidence it believed and what weight it would give that evidence in deciding whether guilt of appellant was proven beyond a reasonable doubt.

---

[4]Instruction No. 8, in pertinent part, reads: "[W]here the evidence is all consistent with that of guilt beyond a reasonable doubt and inconsistent with every other hypothesis, then it is the duty of the Jury, under the law to render a verdict finding him guilty. But if, on the other hand, any evidence in the case is consistent with the hypothesis of Defendant's innocence, . . . your duty is just as imperative to acquit him."

8. Appellant also argued in his brief as one of his grounds of error on appeal failure of the lower court to grant his motion to change the venue of the trial. Respondent answered that argument on the merits. We do not feel, however, that the point is jurisdictionally before us.

NRS 2.110 provides in part: "An order changing or refusing to change the place of trial shall not be appealed from on an appeal from a judgment, but only on direct appeal from the order changing or refusing to change the place of trial."

A search of the record fails to establish that any direct appeal was taken from the order of September 9, 1969, made following voir dire examination by the jury denying his motion to change the place of trial. A careful review of his notice of appeal shows he is appealing from the judgment and sentence entered September 19, 1969, the orders of October 2, 1969 denying a new trial and entering a warrant of execution. Pursuant to NRS 2.110, failure of appellant to take a direct appeal from the order denying change of place of trial deprives this court of jurisdiction to entertain it. Allgood v. State, 78 Nev. 326, 372 P.2d 466 (1962); State v. Preston, 30 Nev. 301 (1908).

Accordingly, the judgment of conviction, the sentence, and order denying a new trial are affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.