141 Nev., Advance Opinion 47

IN THE SUPREME COURT OF THE STATE OF NEVADA

ANDREW YOUNG,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 83243



FILED

OCT 16 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of 12 counts of burglary; 4 counts of larceny from the person, victim 60 years of age or older; 3 counts of fraudulent use of a credit or debit card; and 1 count of grand larceny. Eighth Judicial District Court, Clark County; Jacqueline Bluth, Judge.

*Affirmed in part, reversed in part, and remanded.*

Lowe Law L.L.C. and Diane C. Lowe, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and John Afshar, Chief Deputy District Attorney, Clark County, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, BELL, J.:

Appellant Andrew Young was charged in a series of thefts against nine people over the age of 60. Each person had a wallet stolen from

25-45163

a purse or pocket. The credit and debit cards from the stolen wallets were then used to make purchases. Police identified Young from one in-person contact and surveillance video. Following a jury trial, Young was convicted of multiple felonies related to these incidents.

Young raises numerous issues on appeal, including juror bias and an erroneous jury instruction on the offense of larceny from the person. Young argues that a juror's expression of sympathy for the victims constituted inferable bias that warranted the juror's removal regardless of the juror's assertions of impartiality. In support, Young relies on *Sayedzada v. State*, 134 Nev. 283, 419 P.3d 184 (Ct. App. 2018). *Sayedzada* correctly identifies different categories of juror bias; however, we overrule *Sayedzada* to the extent *Sayedzada* instructs that a juror's answers to questions are irrelevant to a bias analysis based on those categories and to the extent that *Sayedzada* could be read to suggest that the category of bias determines whether a judge must excuse a juror. We also conclude that under the particular facts of this case, the district court acted within its discretion in determining that the juror was not biased and denying Young's motion for a mistrial. Further, Young correctly asserts that the jury instruction on larceny from the person was erroneous and prejudicial as to one count of larceny from the person. The erroneous instruction warrants reversal of that conviction. Young fails to establish that any other issue raised warrants relief. As a result, we reverse Young's conviction for larceny from the person, victim 60 years of age or older (count 2), but we otherwise affirm the judgment of conviction.

*FACTS AND PROCEDURAL HISTORY*

Between June and August 2020, nine people, all 60 years of age or older, became victims of theft. The incidents followed a similar pattern. Young, usually working with an accomplice, would approach a person over

Supreme Court
of
Nevada

(O) 1947A

60 in a public place. While the person was distracted, Young would take a wallet from the person's bag or pocket, often using a jacket draped over his arm to conceal his actions. Young would then attempt to use the victim's credit or debit cards at nearby businesses. Most of these thefts and fraudulent transactions were captured on surveillance video, and Young was eventually identified by the Las Vegas Metropolitan Police Department. For these incidents, the State charged Young with 22 crimes, including counts of burglary; larceny from the person, victim 60 years of age or older; grand larceny; and fraudulent use of a credit or debit card. Young opted to go to trial on all charges.

During Young's jury trial, one of the jurors sent a note to the judge expressing sympathy for the senior victims and asked to give them money. After a hearing, the district court determined under the particular circumstances of the case the juror could judge the case fairly and objectively and denied Young's motion for a mistrial. The jury found Young guilty on all but two of the charges. The jury returned a verdict of not guilty on counts 14 and 20, which alleged the fraudulent use of credit cards at a store where the cards were declined.

At sentencing, Young was adjudicated under the large habitual criminal statute on nine of the counts. For each of those counts, the court sentenced Young to life with parole eligibility after ten years and ran each of those counts consecutively. Young also received varying shorter concurrent sentences on other counts. The end result was an aggregate term of life with the possibility of parole after 90 years.

## DISCUSSION

Young raises seven main issues on appeal, arguing (1) the district court erred in denying the motion for a mistrial based on juror bias, (2) the district court improperly allowed defense counsel to challenge the

juror's impartiality in the juror's presence, (3) the convictions are not supported by sufficient evidence, (4) the district court erred in admitting certain evidence, (5) the district court gave erroneous jury instructions, (6) the district court improperly sentenced Young, and (7) the convictions are tainted by cumulative error. We will address each issue in turn.

*Denial of motion for a mistrial based on juror bias*

First, Young argues that the district court erred in denying a defense motion for a mistrial after a juror expressed sympathy for the victims. We disagree.

On the third day of trial, after hearing testimony from seven of the victims, Juror No. 11 sent a note to the district court judge asking, "Would you mind if I give each of the victims $2,000 in an envelope after they are excused?" The district court alerted the parties to the note. In response, Young's counsel expressed concern that Juror No. 11 had already formed an opinion as to Young's guilt. The district court noted that no one disputed the crimes occurred and the victims were financially harmed. The contested issue before the jury was whether Young had committed the crimes. Under the particular circumstances of the case, the court reasoned Juror No. 11's desire to financially compensate the victims did not necessarily mean the juror was biased against Young.

During a recess, the court canvassed Juror No. 11 outside the other jurors' presence. Consistent with the note, Juror No. 11 expressed sympathy for the senior victims and a desire to help. At the same time, the juror expressed an ability to be impartial. Juror No. 11 stated the offer to help the victims had nothing to do with Young as a defendant and explained that the juror had previously helped crime victims. Juror No. 11 expressed an ability to remain fair and impartial and to wait to form opinions until the end of the trial.



After Juror No. 11 left the courtroom, defense counsel moved for a mistrial, arguing that the juror had clearly expressed a preference for the victims and could influence the other jurors, which amounted to a due process violation. The State disagreed, arguing that there was no misconduct given Juror No. 11's explanation that the note had nothing to do with Young's guilt or the juror's ability to be fair and impartial. The court noted again the evidence established the senior victims' property had been stolen and concluded under the circumstances sympathy for the victims did not equate to a determination that Young had committed the crimes. The court denied Young's motion for a mistrial.

The denial of a motion for a mistrial is reviewed for an abuse of discretion. *Sorce v. State*, 88 Nev. 350, 353, 497 P.2d 902, 904 (1972). A district court's ruling as to a juror's partiality is a factual determination also reviewed for an abuse of discretion. *See Blake v. State*, 121 Nev. 779, 795, 121 P.3d 567, 577 (2005) (reviewing a for-cause challenge against a prospective juror for an abuse of discretion); *Nelson v. Commonwealth*, 589 S.E.2d 23, 30-31 (Va. Ct. App. 2003) (applying the abuse-of-discretion standard to decisions regarding challenges for cause to both seated jurors and venirepersons).

A defendant has a constitutional right to a fair trial by an impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); U.S. Const. amend. VI; Nev. Const. art. 1, § 3. An impartial jury is one that is "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *see also Lamb v. State*, 127 Nev. 26, 37, 251 P.3d 700, 707 (2011). "[I]f it reasonably appears that one or several members of a jury have become biased and will not engage in honest deliberation," a mistrial may be appropriate. *Sorce*, 88 Nev. at 353, 497 P.2d at 904. A mid-

SUPREME COURT
OF
NEVADA

(O) 1947A

trial challenge to a juror is subject to the same inquiry as a challenge for cause during jury selection, but with different potential remedies. *See Hall v. State*, 89 Nev. 366, 370-71, 513 P.2d 1244, 1247 (1973) (citing NRS 16.050 when considering whether the fact that a juror was the victim of a burglary committed during the trial rendered the juror biased); *Fields v. Brown*, 503 F.3d 755, 774 (9th Cir. 2007) ("For those revelations [of juror bias] that occur during voir dire, the remedy is a cause challenge; for those that occur during trial, the remedy is a contemporaneous proceeding during which the trial court can preserve the integrity of the jury.").

A juror may be challenged "for any cause or factor which would prevent the juror from adjudicating the facts fairly." NRS 175.036(1). More particular grounds to support a challenge for cause are found in NRS 16.050(1) and Rule 17(6) of the Nevada Rules of Criminal Practice (NRCrP). Here, the district court did not abuse its discretion in denying Young's motion for a mistrial. Juror No. 11's note and statements of sympathy for the victims indicated that the juror believed the victims' testimony to be true and desired to help the victims financially. Each of the victims testified at trial about their wallets being stolen, which was corroborated by surveillance video. The primary issue at trial was not whether the complaining witnesses had been victimized, but who committed the crimes. Important to the analysis here, none of the victims identified Young as the perpetrator, so the case did not turn on the victims' credibility. *Cf., e.g., State v. Rojas*, 868 P.2d 1037, 1039-42 (Ariz. Ct. App. 1993) (finding that juror, who asked to give the two complaining witnesses money and wrote a note expressing sympathy for their ordeal, could not be deemed impartial where the case against the defendant rested on the children's truthfulness about whether the defendant sexually abused them).

Under the facts of this particular case, Juror No. 11's sympathy for the victims did not show that the juror harbored bias against Young, had already determined Young's guilt, or would ignore the district court's instruction to apply the law fairly. *See generally* NRS 16.050(1)(f), (g) (providing that a for-cause challenge may be taken when a juror has "formed or expressed an unqualified opinion or belief as to the merits of the action, or the main question involved therein" or has "a state of mind . . . evincing enmity against or bias to either party"); NRCrP 17(6)(M), (O) (similar); NRCrP 17(6)(N) (providing that a for-cause challenge may be taken based on a juror's "[c]onduct, responses, state of mind, or other circumstances that reasonably lead the court to conclude the juror's views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instruction and oath"). Juror No. 11's own assertions regarding the ability to be impartial while still having sympathy for the victims supported the district court's finding that the juror could serve fairly and objectively. The district court "has broad discretion in ruling on challenges for cause since these rulings involve factual determinations" and the court is in a better position "to view a . . . juror's demeanor than a subsequent reviewing court." *Leonard v. State*, 117 Nev. 53, 67, 17 P.3d 397, 406 (2001). Here, the district court acted within its discretion in questioning and retaining Juror No. 11 and in denying the motion for a mistrial.

Young argues that *Sayedzada v. State*, 134 Nev. 283, 419 P.3d 184 (Ct. App. 2018), compels a different result because the juror's expression of sympathy for the victims constituted inferable bias. In *Sayedzada*, the defendant argued the district court abused its discretion by denying for-cause challenges to two prospective jurors who had experiences

similar to the victim's. *Id.* at 288-89, 419 P.3d at 191. In addressing that argument, the court of appeals described and analyzed three types of bias that provide grounds for removing a juror for cause: actual, implied, and inferable bias. *Id.* at 289-91, 419 P.3d at 191-94.

The *Sayedzada* court correctly identified the three types of bias, explaining that actual bias "arises where the juror demonstrates a state of mind that prevents the juror from being impartial"; implied bias arises based "on the juror's background and/or relationship to the parties or case"; and inferable bias arises "where the juror discloses some fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias." *Id.* at 289-91, 419 P.3d at 191-92 (citing *United States v. Torres*, 128 F.3d 38, 43-48 (2d Cir. 1997)) (internal quotations marks omitted).

The court of appeals added that in cases of implied or inferable bias, once "facts are elicited that permit a finding" of implied or inferable bias, "the juror's statements as to his or her ability to be impartial become irrelevant." *Id.* at 290-91, 419 P.3d at 191-92 (internal quotation marks omitted). Finally, the court concluded that "[i]n assessing juror bias, a district court must excuse a juror for cause for actual and implied bias, and may excuse a juror for inferable bias." *Id.* at 294, 419 P.3d at 194.

In identifying these categories of bias, *Sayedzada* relied on a Second Circuit case, *United States v. Torres*, 128 F.3d 38, 45-48 (2d Cir. 1997), not Nevada law. A key difference between Nevada law and federal law is that Nevada has a statute and now a rule of criminal practice listing specific circumstances that may support a challenge for cause, while the federal statutes and rules contain no such list. *Compare* NRS 16.050(1),

*with* 28 U.S.C. § 1866(c). The terms "actual bias," "implied bias," and "inferred bias" are only mentioned in NRCrP 17(6)(O), which uses the terms generally without tying those labels to specific grounds or types of grounds. *See* NRCrP 17(6)(O) ("A challenge for cause may be taken on one or more of the following grounds . . . . The existence of a state of mind in the juror evincing enmity against or bias to either party. Bias may be actual, implied, or inferred.")

*Sayedzada* was decided in 2018 and thus predates NRCrP 17(6), which became effective in 2021. *See* ADKT 491 (Order Adopting Statewide Rules of Criminal Practice, Dec. 29, 2020) (providing an effective date of March 1, 2021). Neither NRS 16.050 nor NRCrP 17(6) distinguishes their enumerated grounds as reflecting a particular type of bias. Further, neither the statute nor the rule provides that any of the enumerated grounds are to be treated, analyzed, or decided in a different manner than the others when determining whether to grant a for-cause challenge to a juror. In fact, the Nevada Legislature removed references to categories of juror bias. Prior Nevada statutes explicitly defined actual bias and delineated implied-bias grounds for removing a juror. *See* NRS 175.100(2) (repealed 1967) ("For the existence of a state of mind on the part of the juror which leads to a just inference, in reference to the case, that he will not act with entire impartiality, which is known in this Title as actual bias."), *quoted in Bean v. State*, 86 Nev. 80, 99 n.1, 465 P.2d 133, 145 n.1 (1970) (Batjer, J., dissenting); NRS 175.105 (repealed 1967) (listing the exclusive grounds on which a "challenge for implied bias may be taken"), *quoted in Howard v. State*, 84 Nev. 599, 602 n.3, 446 P.2d 163, 165 n.3 (1968), *overruled by Bean*, 86 Nev. at 90, 465 P.2d at 139. These statutes were repealed in 1967. 1967 Nev. Stat., ch. 523, § 447, at 1472. They were replaced with NRS 175.036(1),

which provides generally that a prospective juror may be challenged for any cause "which would prevent the juror from adjudicating the facts fairly." Similarly, when the Nevada Rules of Criminal Practice were adopted, grounds supporting for-cause challenges to jurors were simply listed, and no separate categorization was utilized. *See* NRCrP 17(6).

The focus of a for-cause challenge is whether the juror can adjudicate the facts fairly, and the determination as to whether cause exists does not depend on whether the bias is characterized as actual, implied, or inferred. Once a juror has expressed a potential bias, the trial court must look at the totality of the circumstances to determine if the juror meets the criteria for bias under any of the three categories: whether the juror exhibits an expressed actual bias; whether the juror's circumstances demonstrate an implied, or as a matter of law bias; or whether the court infers bias because an average juror in the same situation would be unable to be fair. Regardless of the category of bias, if the court determines the juror is biased, the juror must be excused.

Accordingly, we overrule *Sayedzada* to the extent it ascribed different processes or analyses based on the category of bias at issue. District courts should apply NRS 16.050 and NRCrP 17(6) when determining whether to remove a juror for cause in a criminal case. Because the district court here acted in accordance with the statute and the Nevada Rules of Criminal Practice when denying Young's motion for a mistrial, we conclude the court did not abuse its discretion. As the record supports the district court's determination that Juror No. 11 was not biased, we need not address Young's arguments that the juror improperly influenced the rest of the jury.

*Challenge to juror's impartiality in the juror's presence*

Second, Young contends that defense counsel's argument about Juror No. 11's bias, made in the juror's presence, likely prejudiced Juror No. 11 against Young. Young claims the district court should have ensured that arguments were made outside the juror's presence.

Young fails to show any error in this regard. The district court allowed defense counsel to question Juror No. 11 about the juror's note, and after the questioning appeared to be finished, the court asked counsel, "Do you have any other questions[?]" Counsel responded, "Judge, I think it's blatantly obvious that he's not fair and impartial." The district court did nothing to elicit this statement and quickly stopped counsel from making further arguments in the juror's presence. Any error that occurred was caused by Young's counsel and does not entitle Young to relief. *See Belcher v. State*, 136 Nev. 261, 274-75, 464 P.3d 1013, 1028 (2020) (concluding that a party cannot challenge on appeal an error that same party invited or induced).

*Sufficiency of the evidence*

Third, Young argues the State failed to present sufficient evidence that he stole the victims' wallets, pointing out that none of the victims or other percipient witnesses identified him. Young also challenges the sufficiency of the evidence supporting the burglary convictions, arguing that an individual visiting the commercial establishments identified in the charges "may have a multitude of intentions upon entry, despite ultimately engaging in criminal activity."

In reviewing the sufficiency of the evidence, we must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

U.S. 307, 319 (1979); *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998). "[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

The evidence at trial included video footage depicting Young, often working in tandem with an accomplice, stealing wallets and then making or attempting to make purchases with the credit or debit cards from the stolen wallets. Detectives testified the videos showed Young and an accomplice entering the businesses and leaving immediately after taking the wallets, and Young subsequently entering nearby stores to use the stolen cards. Detectives also testified they were able to identify Young as the man in the videos based on clothing, shoes, the jacket draped over an arm, and Young's unusual gait. Viewing the evidence in the light most favorable to the prosecution, a rational juror could find beyond a reasonable doubt that Young entered the businesses with the intent to commit a crime and that Young was the person who committed the theft-related offenses. *See Grant v. State*, 117 Nev. 427, 435, 24 P.3d 761, 766 (2001) ("Intent need not be proven by direct evidence but can be inferred from conduct and circumstantial evidence."). We conclude there was sufficient evidence to support the challenged convictions. *See* NRS 205.060 (burglary); NRS 205.220 (grand larceny); NRS 205.270 (larceny from the person); NRS 205.760(1) (fraudulent use of credit or debit card).

*Admissibility of evidence*

Fourth, Young argues the district court erred by allowing officers to testify about uncharged crimes or other acts, to narrate surveillance video, and to testify as to hearsay. We generally review the admission of evidence for an abuse of discretion. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). Because Young failed to object to any of

the challenged evidence, he must show plain error affected his substantial rights. *Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018); NRS 178.602 (explaining when an unpreserved error "may be noticed"). An error is "plain" when it "is clear under current law from a casual inspection of the record," and it affects a defendant's substantial rights "when it causes actual prejudice or a miscarriage of justice (defined as a grossly unfair outcome)." *Jeremias*, 134 Nev. at 50-51, 412 P.3d at 48-49 (internal quotation marks omitted).

*Evidence of other crimes or acts*

Young contends several officers improperly testified about other acts or uncharged crimes. Young first complains of Officer Jerry Wheeler's testimony that, in responding to a call from Walmart, the officer was shown footage by Walmart security "of a male that they've had problems with before, that they're concerned about him trying to steal." Although this testimony appears to reference uncharged acts, Young fails to show its admission affected his substantial rights. The State did not specifically elicit the testimony, and the reference to uncharged acts was fleeting and vague. *See Collman v. State*, 116 Nev. 687, 705-06, 7 P.3d 426, 437-38 (2000) (noting that when the reference to a defendant's past criminal activity was fleeting and inadvertent, any error was harmless). Additionally, overwhelming evidence showed Young was the person who committed the charged crimes. Surveillance video showed Young taking an item from a victim's purse, and Officer Wheeler confronted Young in person at Walmart and recovered the wallet from Young. Young was similarly depicted and identified in surveillance video for the other charged theft-related offenses.

Next, Young complains about Detective Jeremy Jacobitz's and Detective Dominick Cipriano's testimony that they watched a lot of video

surveillance before identifying Young. This testimony did not specifically reference any uncharged conduct. The charged crimes involved thefts on nine different occasions and the use of stolen credit cards on at least five occasions, most of which were recorded by multiple surveillance cameras. When the detectives testified they watched a lot of video surveillance, the record does not reflect they meant videos of any acts other than the ones charged in this case.

Young next complains about Detective Jacobitz's testimony that Young was smooth and seemed experienced at theft. Detective Jacobitz was stating an opinion based on observing Young in the surveillance video that was being played for the jury. The detective stated: "I actually, in my personal opinion, I'm watching Andrew Young in this video, and I completely believe he's smooth at this. He's been doing this for a long time. He's good." The State did not elicit that statement about Young and in fact followed up with questions confirming the detective was unaware of any previous uncharged thefts and was merely giving his opinion about Young being smooth. We therefore conclude Young has failed to demonstrate the testimony was error plain from the record affecting his substantial rights.

Finally, Young challenges Detective Ethan Grimes' testimony about doing a "records check" with Young's name and birth date and finding "a match in our system." It is not clear this testimony referenced any uncharged conduct. Detective Grimes did not suggest the match was because Young had previous convictions or arrests. The State's follow-up question clarified Young was in the police system because of the citation for an offense charged in this case—a theft at Walmart on July 8, 2020. Therefore, Young fails to demonstrate that Detective Grimes' testimony was error plain from the record affecting his substantial rights.

To the extent Young contends the district court was required to hold a pretrial hearing and proffer a limiting instruction, the claim lacks merit. The State did not seek to admit evidence of other crimes or acts under NRS 48.045(2), and Young did not object to the evidence on this basis at trial. Therefore, the district court had no reason to hold a *Petrocelli* hearing. *See Petrocelli v. State*, 101 Nev. 46, 51, 692 P.2d 503, 507 (1985) (requiring the district court to hold a hearing before allowing evidence of other crimes or acts to be admitted under NRS 48.045(2)), *superseded by statute on other grounds as stated in Thomas v. State*, 120 Nev. 37, 44-45, 83 P.3d 818, 823 (2004). As neither Young nor the State contends the other-act evidence identified above—the statements by Walmart security—was admissible for a limited purpose, no limiting instruction would have been proper. *See Tavares v. State*, 117 Nev. 725, 733, 30 P.3d 1128, 1133 (2001) (stating that a limiting instruction is warranted when "evidence may be used only for limited purposes"), *modified on other grounds by Mclellan*, 124 Nev. at 270, 182 P.3d at 111.

*Officers' narration of surveillance video*

Young contends the district court erred in allowing multiple officers to narrate the surveillance videos and to identify Young as one of the perpetrators depicted in the videos. Young argues the testimony amounted to plain error because the officers did not have independent knowledge of Young and their narration of the videos was unnecessary and prejudicial.

Young fails to demonstrate error that is plain from the record. The first police officer who testified at trial—Officer Wheeler—identified Young as the man depicted in the July 8 Walmart surveillance video and bodycam footage. Officer Wheeler had sufficient knowledge of Young's appearance because he observed Young in Walmart by a live surveillance

Supreme Court
of
Nevada

(O) 1947A

camera and then interacted with Young outside of Walmart, at which time he learned Young's name and birth date. *See Burnside v. State*, 131 Nev. 371, 388, 352 P.3d 627, 639 (2015) (stating that an officer's independent identification of a defendant is admissible where the officer had prior knowledge of or familiarity with the defendant). The detectives who subsequently testified explained they had relied on Officer Wheeler's identification and on the videos and images obtained from the July 8 Walmart theft to identify Young as the man depicted in other surveillance videos. *See id.* (stating that detectives' testimony identifying the defendant in surveillance videos was admissible where the testimony was "based on other identification evidence that was admitted before the detectives testified").

Further, the detectives' narration of the surveillance videos was proper because it "assisted the jury in making sense of the images depicted in the videos." *Id.* The surveillance footage came from multiple cameras at multiple locations, and the detectives' narration assisted the jurors in following the timeline of Young's movements inside and outside the casinos and stores. Additionally, much of the narration involved explaining the detectives' observations about Young's actions, appearance, and mannerisms in relation to their investigative process. Thus, Young fails to show plain error warranting relief.

*Hearsay evidence*

Young contends Detective Jacobitz's testimony regarding the burglary and the theft of a wallet at Caesars Palace was hearsay and should not have been admitted. Detective Jacobitz opined that the theft in the Caesars' elevator appeared to be a collaborative effort between Young and the accomplice depicted on the surveillance video. The detective based that opinion on the fact that neither Young nor the accomplice rode the elevator

SUPREME COURT
OF
NEVADA

(O) 1947A

16

to a guestroom; instead, they returned to the ground floor and left the casino after the theft. Detective Jacobitz later learned Young was not a registered guest at Caesars, so there was no reason for Young to be in the elevator.

At trial, Young objected to the detective's testimony that Young was not a registered guest at the hotel as a hearsay reference. The district court allowed the State to lay a foundation for that statement, which the State did by eliciting from the detective that once he identified the suspect in the elevator as Young, the detective checked with Caesars and was told verbally that Young was not a guest at the hotel. The defense did not renew the objection or move to strike this testimony. Young's failure to renew his objection to the testimony after the district court permitted the State to lay a foundation for it deprived the State of the opportunity to argue whether the statement was hearsay or whether a hearsay exception applied.

Young now argues Detective Jacobitz did not have firsthand knowledge of whether Young was a guest at the hotel and must have learned it from another source, and thus the detective's testimony about Young's collaboration with the other man in the elevator to steal the wallet was impermissible hearsay. On this record, Young cannot show the admission of the statement was plainly erroneous. Furthermore, the statement did not prejudice Young given the overwhelming evidence against him. The video footage showed Young and the accomplice rode the elevator with an elderly woman. Neither man exited on a floor with guestrooms but instead returned immediately to the ground level and left the hotel. In the elevator, the accomplice distracted the woman while Young took her wallet and put it under his jacket. Thus, Young fails to show that any error in the admission of the out-of-court statement warrants relief. *Cf.*

(O) 1947A

*Tabish v. State*, 119 Nev. 293, 311, 72 P.3d 584, 595 (2003) ("Harmless error analysis applies to hearsay errors.").

*Jury instruction error*

Young argues that five jury instructions misstated the law, warranting reversal of the associated convictions. We agree with Young as to one of the instructions but conclude that the challenges to the other instructions lack merit. And we further conclude that the erroneous instruction impacts only one of the convictions.

*Jury instruction no. 10*

Jury instruction no. 10 stated that, for the purposes of larceny from the person, property is "taken 'from the person' of the victim if the property was within the victim's reach, inspection, observation, disposition or control." In *Terral v. State*, this court held that larceny from the person under NRS 205.270 "is not committed if the property is taken from the immediate presence, or constructive control or possession of the owner." 84 Nev. 412, 414, 442 P.2d 465, 466 (1968). Rather, the property must be taken "from the person" of the victim, i.e., "the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession." *Ibarra v. State*, 134 Nev. 582, 589, 426 P.3d 16, 21 (2018) (internal quotation marks omitted) (explaining *Terral*'s holding). *Terral* explained that, with larceny from the person, "the person of another has been violated and his privacy directly invaded," and the offense, unlike other larceny offenses, is a felony regardless of the value of the property. 84 Nev. at 414, 442 P.2d at 466. Because of this heightened penalty, the court reasoned larceny from a person should be limited to "pickpockets, purse snatchers, . . . and the like." *Id.*

Young contends the instruction allowed the jury to find the element of "property taken from the person" where the property was in the

SUPREME COURT
OF
NEVADA

(O) 1947A

victim's presence but not actually on the victim's person. Young did not object to the instruction and thus must demonstrate plain error. *Guidry v. State*, 138 Nev. 390, 392, 510 P.3d 782, 787 (2022).

In light of *Terral*, Young has established plain error. Instruction no. 10 misstates Nevada law because it allowed the jury to find Young guilty even if the property was not on or attached to the victim's person. We conclude that the error only affects count 2. Unlike the evidence proving the other larceny counts, the evidence as to count 2 indicated that the purse was on the chair next to the victim rather than on her person when the wallet was taken from it. Therefore, we conclude the erroneous instruction was prejudicial as to count 2, and we reverse the judgment of conviction as to this count. As we reverse Young's conviction on count 2, we need not address Young's argument that the convictions on count 2 (for larceny from the person) and count 3 (for grand larceny) violate double jeopardy principles.

We discern no prejudice as to the burglary conviction associated with the conduct underlying count 2. Young did in fact steal the wallet, just not from the victim's person. Nor do we discern any prejudice as to the other larceny-from-the-person counts (counts 8 and 10). The evidence presented at trial showed both victims were holding or wearing their purses when their wallets were taken from their purses. The taking of a wallet from a purse or backpack attached to or held by a person is similar to the type of conduct (pickpocketing and purse snatching) that *Terral* identifies as violating NRS 205.270 and implicates the same concerns (the violation of one's person and a direct invasion of one's privacy). Therefore, Young fails to demonstrate that the erroneous instruction prejudiced him with respect to these counts.

Supreme Court
OF
Nevada

(0) 1947A

*Jury instructions nos. 13, 14, 22, and 23*

Young also argues the district court plainly erred in giving jury instruction nos. 13, 14, 22, and 23. With respect to jury instruction nos. 13 and 14, as Young acknowledges on appeal, not only did he fail to object to these instructions, but he also specifically requested them. Given Young's participation in the alleged error, he cannot now complain about the instructions on appeal. *See Belcher*, 136 Nev. at 274-75, 464 P.3d at 1028 (concluding that a party cannot challenge on appeal an error that the party invited, induced, or provoked). Moreover, Young has failed to demonstrate that these instructions are clearly erroneous or affected his substantial rights. And as to Young's argument that language in instruction nos. 22 and 23 undercut the presumption of innocence and lowered the State's burden of proof, we have previously rejected these arguments and approved identical jury instructions. *E.g., Blake v. State*, 121 Nev. 779, 799, 121 P.3d 567, 580 (2005); *Guy v. State*, 108 Nev. 770, 778, 839 P.2d 578, 583 (1992). Thus, Young fails to show these instructions were plainly erroneous.

*Adjudication as habitual criminal*

Finally, Young makes several arguments concerning the habitual criminal adjudication. None of these arguments warrants relief.

First, Young contends the district court should have conducted a hearing on and made findings about the number and nature of the prior offenses that qualified Young for habitual criminal treatment under NRS 207.010. Young argues the documentation for his four convictions in Pennsylvania was insufficient to demonstrate they were felonies and challenges several of the Nevada convictions as arising in the same case or containing the same offense date.

Young did not make these arguments below and fails to demonstrate error that is plain from the record. To support an adjudication

SUPREME COURT
OF
NEVADA

20

(O) 1947A

under the large habitual criminal statute, the State had to prove that Young had seven prior felony convictions. NRS 207.010(1)(b). At the sentencing hearing, the State presented four convictions from Pennsylvania and nine convictions from Nevada. Even crediting Young's arguments—and thus excluding the Pennsylvania convictions and treating the two 1996 Nevada convictions as a single conviction and the 2002 and 2003 Nevada convictions as a single conviction—that still leaves seven felony convictions: (1) possession of credit card without cardholder's consent and burglary in 1996; (2) theft in 1998; (3) larceny from the person, victim over 60, in 2002, and burglary in 2003; (4) fraudulent use of credit card in 2006; (5) larceny from the person in 2006; (6) battery with substantial bodily harm in 2017; and (7) battery with substantial bodily harm in 2019. Young does not challenge those convictions, which are sufficient to support adjudication under the large habitual criminal statute.

Next, Young contends the district court violated the statutory and due process protections of NRS 207.016 by failing to hold a separate hearing before imposing a sentence under the habitual criminal statute. The statute requires a hearing when the defendant "denies any previous conviction charged." NRS 207.016(3) (stating that when the defendant "*denies any previous conviction charged*, the court shall determine the issue of the previous conviction after hearing all relevant evidence presented on the issue by the prosecution and the defendant" (emphasis added)). Because Young did not challenge any of the prior convictions below, no hearing was required under that statute.

Next, Young argues the district court erred by imposing a sentence based on a habitual criminal adjudication without a jury finding the requisite prior felony convictions. A defendant has a constitutional

right to have any fact that exposes the defendant to a greater sentence found by a jury rather than a judge and proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The United States Supreme Court, however, recognized a narrow exception to this rule in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), holding that a judge may find "the fact of a prior conviction" even though that fact may trigger a higher penalty. *See Apprendi*, 530 U.S. at 489-90; *see also Erlinger v. United States*, 602 U.S. 821, 837-38 (2024) (noting criticism of *Almendarez-Torres* but declining to revisit the decision because the parties had not requested the Court do so).

Though Young contends *Almendarez-Torres* is disfavored, it remains good law. Furthermore, Young did not argue below that any facts other than the existence of prior felony convictions had to be found before triggering NRS 207.010. Young also does not challenge seven of the felony convictions used for the adjudication. The existence of those seven felony convictions—a fact that was properly found by the judge—was sufficient to trigger NRS 207.010(1)(b) without any further factfinding. Thus, Young fails to demonstrate that the district court violated his rights to due process or a jury trial.

Young also argues that trial counsel provided ineffective assistance at sentencing by failing to challenge the nature and number of the prior convictions and by making no argument to mitigate the sentence. "This court has repeatedly declined to consider ineffective-assistance-of-counsel claims on direct appeal unless the district court has held an evidentiary hearing on the matter or an evidentiary hearing would be needless." *Archanian v. State*, 122 Nev. 1019, 1036, 145 P.3d 1008, 1020-

21 (2006). As neither of these exceptions exists here, we decline to address this issue.

*Cumulative error*

Young finally argues the cumulative effect of the alleged errors warrants reversal of the convictions. "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002). The relevant factors in deciding whether cumulative error requires reversal are "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Rose v. State*, 123 Nev. 194, 211, 163 P.3d 408, 419 (2007) (quoting *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000)).

Although the crimes here are serious, the issue of Young's guilt was not close on the charges for which Young was convicted. Only one error (the jury instruction on larceny from the person) was prejudicial and warrants reversal, and any other errors were minor. Thus, we conclude cumulative error did not violate Young's right to a fair trial.

## CONCLUSION

We conclude the district court did not err in allowing Juror No. 11 to remain on the jury panel. District courts should apply NRS 16.050 and NRCrP 17(6) in criminal cases when determining whether to remove a juror for cause. Both NRS 16.050 and NRCrP 17(6) list grounds for which a challenge for cause may be taken, without regard to any label that might be assigned to the juror's alleged bias. To the extent *Sayedzada* relies on categories of juror bias alone in assessing whether cause exists, it is overruled. We also conclude that the district court gave an incorrect jury instruction as to the larceny-from-the-person charges, requiring reversal of

the conviction on count 2. As we find no reversible error as to any of the other convictions or the sentence imposed, we affirm the judgment of conviction as to all counts except count 2. Young's conviction on count 2 is reversed and the case remanded for the district court to strike count 2 from the judgment and enter an amended judgment of conviction.

_____, J.
Bell

We concur:

_____, C.J.
Herndon

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Lee

